# IN THE COURT OF APPEALS OF IOWA

―――――――――――

No. 25-1809
Filed May 27, 2026

―――――――――――

**In the Interest of C.F. and P.F., Minor Children,**

**A.F., Mother,**
Appellant.

―――――――――――

Appeal from the Iowa District Court for Guthrie County,
The Honorable Erica Crisp, Judge.

―――――――――――

**AFFIRMED**

―――――――――――

Donna M. Schauer of Schauer Law Office, Panora, attorney for appellant
mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Chira Corwin of Corwin Law Firm, Des Moines, attorney and guardian ad
litem for minor children.

―――――――――――

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A mother appeals the termination of her parental rights to two of her children, C.F. and P.F. On appeal, the mother challenges the statutory grounds for termination, argues that termination is not in the children's best interests, and that two permissive exceptions to termination should have been applied. Upon our review we affirm the termination of the mother's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

C.F. was born in May 2013, and P.F. was born in February 2022. A.F. is the biological mother of both children. C.F.'s biological father is deceased, and P.F.'s biological father's initials are also A.F.[1] The children were initially brought to the attention of the Iowa Department of Health and Human Services (HHS) when A.F., an older brother of C.F. and P.F. who is not involved in this appeal, went to the emergency department and admitted to taking THC. The mother admitted that she gave the THC to A.F. and that she had taken it as well. This prompted HHS to conduct a home investigation, and HHS determined the home to be physically unsafe for the younger children. HHS also drug tested all the children in the home, and A.F. and P.F. both tested positive for THC.

The children were removed from the home on April 24, 2024. After a petition was filed, the juvenile court adjudicated C.F. and P.F. to be children in need of assistance (CINA) on November 13. The children remained in out-of-home placement from the time of their initial removal until the termination trial. C.F. and P.F. were initially placed with their adult sibling

---

[1] The father consented to the termination of his parental rights and does not appeal.

but were quickly moved at the request of the same adult sibling. He stated that he could not provide care for his own biological children and his two younger siblings. C.F. and P.F. were then moved to separate familial relative placements.

After removal, the mother made a credible threat to kill the prior-assigned judge, the child protective services worker, and the mother's adult son who initially took in the children. She was convicted of threats of terrorism and tampering with a witness. At the time of termination, the mother was on probation for those offenses. The mother was offered multiple services throughout the case. These included Family Centered Servies, supervised visits, substance-use evaluations and treatment, mental-health treatment, parenting classes, and a psychological evaluation.[2] The mother engaged with some, but not all, of the services required by HHS. The mother spent several months in jail leading up to the termination trial due to pre-trial release violations, causing several services from this case to be suspended.

At the beginning of this case, P.F. required speech therapy, physical therapy, and occupational therapy. She ultimately needed and received surgery for ear tubes to be placed. This procedure was delayed due to the mother's initial refusal to consent, but she changed her mind after receiving a second opinion. P.F. was eventually diagnosed with fetal alcohol syndrome, but the mother denied drinking during her pregnancy. C.F. had a history of struggling to gain weight, as well as gastrointestinal and bowel issues. He was also testing two years behind his classmates in school. After his most recent visit with the mother, his therapist recommended that the visits should be discontinued as they were "traumatizing." The HHS case worker testified

---

[2] The court approved funding for therapy when it was not covered by the mother's insurance.

that C.F. began acting inappropriately at daycare after visits with his mother. The juvenile court suspended visits at the request of C.F.'s guardian ad litem.

At previous hearings leading up to the eventual termination trial, the older children in the family read letters they had written to the court, documenting their childhood from their own perspectives. The older children testified that they had been the primary caregivers for the younger children at times, and that their utilities and plumbing were sometimes shut off for months. They also testified that they would sometimes skip meals to ensure their younger children had enough to eat. The older siblings also reported that the mother was physically abusive. The mother denies these claims.

Although there was some improvement throughout the case, HHS still had concerns about the suitability of mother's home for the children at the time of termination. The mother completed a psychosocial evaluation. The evaluator noted that the mother had persistent paranoia, and there was significant concern with the mother's access to weapons. The evaluation also described the mother as impulsive, erratic, angry, depressed, and potentially dangerous. The mother was diagnosed with antisocial personality disorder and borderline personality disorder. The mother disagrees with these diagnoses. The evaluator explained that the family was "very much living on the edge," with inconsistent access to power, water, plumbing, and food.

On October 15, 2025, the juvenile court terminated the mother's parental rights to C.F. and P.F., and the father's parental rights to P.F. The mother now appeals.

## STANDARD OF REVIEW

"We review termination of parental rights proceedings de novo." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

## DISCUSSION

We use a three-step process to determine whether (1) a statutory ground has been established, (2) termination is in the child's best interests, and (3) any permissive exceptions to termination should be applied. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge a step, we need not address it. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).

### I. Statutory Ground

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The juvenile court terminated the mother's parental rights to C.F. under Iowa Code section 232.116(1)(d), (f), and (i) (2025). The court terminated the mother's parental rights to P.F. under section 232.116(1)(d), (h), and (i).

The mother failed to challenge termination under section 232.116(1)(i) in her brief, which constitutes a waiver of any claims of error related to that ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."); *see In re H.L.*, No. 17-0357, 2017 WL 1536018, at *3 (Iowa Ct. App. May 3, 2017); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). We

therefore affirm the juvenile court's determination that the grounds for termination were met under Iowa Code section 232.116(1)(i).

## II.    Best Interests

The mother argues termination of her parental rights is not in the children's best interests. She asserts that she had done what was required of her by HHS and showed that she was no longer suffering from "any mental impediment" at the time of termination.

Iowa Code section 232.116(2) provides, when deciding "whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See also P.L.*, 778 N.W.2d at 37.

The mother has demonstrated erratic and dangerous behavior, making credible threats to a judicial official, an HHS employee, and even her own adult child. The psychosocial evaluation confirms that she is potentially dangerous and abusive, with a lack of regard for the safety and well-being of C.F. and P.F. Additionally, there are legitimate concerns of neglect, food insecurity, and lack of heating, plumbing and other utilities in the household. All of these threaten the children's safety, long-term growth, and physical, mental, and emotional health. The children are reportedly doing well in their familial placements and are receiving needed care. P.F. is in speech therapy and C.F. is working with a tutor to try and catch up in school. It is true the mother has engaged with some services offered by HHS. But as the juvenile court articulated in its apt best interest analysis, the children's best interests are served by keeping them with their placements. Termination of the mother's parental rights is in the children's best interests.

## III.   Permissive exception

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). The mother asserts that two exceptions to termination under section 232.116(3) apply: "(a) [a] relative has legal custody of the child[ren]; . . . [and] (c) [t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship."

True enough, C.F. and P.F. have been placed with familial relatives. But as our supreme court has expressed, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). It is not in the best interests of the children to return to the care of their mother. As discussed in the previous section, our concerns about the children's safety and wellbeing would not be alleviated by permitting the mother to retain her parental rights. And section 232.116(3)(a) does not apply when the children are in the legal custody of HHS and merely placed with a relative. *See*, *e.g.*, *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021). We decline to apply the permissive exception set out in section 232.116(3)(a).

Finally, the mother argues that her "visits went fantastic with C.F. and P.F.," indicating that termination would be detrimental to the children due to their closeness with the mother. The record shows the opposite. The mother's visits with C.F. were discontinued on his therapist's recommendation, describing the final visits as "traumatic" for C.F. Further, the record does not indicate that termination would be detrimental to P.F.

She is receiving necessary medical care in her placement that she was not previously receiving. We decline to apply the permissive exception set out in section 232.116(3)(c). Accordingly, we affirm.

**AFFIRMED.**